Case 4:20-cv-01044   Document 31   Filed on 01/21/21 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 21, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCISCO SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-20-1044 |
| | § | |
| MARATHON OIL COMPANY; MARATHON | § | |
| OIL PERMIAN LLC; and BEDROCK | § | |
| PETROLEUM CONSULTANTS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending and referred to the undersigned Magistrate Judge is Defendant Bedrock Petroleum Consultants LLC's Amended Motion to Dismiss Plaintiff's First Amended Complain for Failure to State a Claim Pursuant to Rule 12(b)(6) (Document No. 6), and Defendants' Motions to Compel Arbitration (Document Nos. 25 & 26). Having considered the two Motions to Compel Arbitration, Plaintiff's response in opposition, the additional briefing, the "Consulting Agreement" which underlies the Motions to Compel Arbitration, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that both Motions to Compel Arbitration (Document Nos. 25 & 26) be GRANTED. Based on that recommendation, the Magistrate Judge further RECOMMENDS that Defendant Bedrock Petroleum Consultants LLC's Amended Motion to Dismiss (Document No. 6) be DENIED as MOOT.

### I.     Background

Plaintiff, Francisco Sanchez, alleges that he was employed by Defendants as a "completions consultant" and that he is due unpaid overtime compensation under the Fair Labor Standards Act

(FLSA). He also asserts a claim of race and national origin discrimination under Title VII. Defendant Bedrock Petroleum Consultants LLC ("Bedrock") argues in its Amended Rule 12(b)(6) Motion to Dismiss that Sanchez did not allege sufficient facts in support of his FLSA claim, and that Sanchez' discrimination claim is both untimely and unsupported by sufficient facts. Subsequent to the filing of that Motion to Dismiss, both Bedrock and Defendants Marathon Oil Company, and Marathon Oil Permian LLC (referred to collectively herein as "Marathon") filed Motions to Compel Arbitration, arguing that Sanchez' employment as a completions consultant for Marathon in the Permian Basin between March and October 2018 was made pursuant to a written "Consulting Agreement," which contains an arbitration provision. According to Defendants, that arbitration provision requires arbitration of all the claims asserted by Sanchez herein. Sanchez, in response to the Motions to Compel Arbitration argues that there is no enforceable arbitration agreement between he and any Defendant, that the terms of the arbitration provision are, at best, ambiguous as to whether arbitration of the claims at issue in this case is required, and that Defendants waived any right to insist on arbitration by virtue of their stipulation to jurisdiction in this Court as well as their failure to timely file a motion to compel arbitration.

**II.      Arbitration**

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving commerce. Under section 2 of the FAA,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Under section 3 of the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA represents a "congressional declaration of a liberal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983); *see also Buckeye Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) (citing 9 U.S.C. §§ 1–16), with its central purpose being to ensure "'that private agreements to arbitrate are enforced according to their terms.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 115 S. Ct. 1212, 1214 (1995) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 109 S. Ct. 1248, 1256 (1989)).

Similar to the FAA, the Texas Arbitration Act ("TAA"), codified in the Texas Civil Practice and Remedies Code, § 171.021 et seq., evidences a liberal policy favoring arbitration, with courts resolving "any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). Under the TAA, "A court shall order the parties to arbitrate on application of a party showing: (1) an agreement to

3

arbitrate; and (2) the opposing party's refusal to arbitrate." TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (West).

In the Fifth Circuit, a two-prong inquiry is used to determine whether parties should be compelled to arbitrate their disputes. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–46 (5th Cir. 2001); *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The first prong requires the court to determine whether "the parties agreed to arbitrate their dispute." *OPE*, 258 F.3d at 445; *see also Kaplan*, 115 S. Ct. 1920, 1924 (1995); *Webb*, 89 F.3d at at 258 (citing cases). Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement. *Id.* Under the second prong, the court must ensure that no legal restraints external to the agreement have foreclosed arbitration. *Id.* at 446. If the court finds that both prongs of this test are met, arbitration is mandatory. *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In determining whether there is a valid agreement to arbitrate, the court must consider the language of the contract entered into by the parties. *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir. 1984). And, "[s]ince arbitration agreements are matters of contract, the validity and scope of such an agreement are governed by state law." *Gonzales v. Brand Energy & Infrastructure Services, Inc.*, No. H12-1718, 2013 WL 1188136 (S.D. Tex. 2013); *see also Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state law principles that govern the formation of contracts."); *Klein v. Nabors Drilling USA, L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) ("whether there is a valid agreement to arbitrate . . . is governed by ordinary state-law contract

principles.").

In determining whether the dispute in question falls within the scope of the arbitration agreement, again, it is state law contract rules that govern. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) (in determining the scope of the arbitration clause, the court is to "apply Texas rules of contract interpretation"). But, where there are any doubts or ambiguities as to scope of the arbitration provision, they are ordinarily resolved in favor of arbitration. *Klein*, 710 F.3d at 236-237 ("It is only in step two of the analysis, determining the scope of a valid arbitration agreement, that we apply the federal policy and resolve ambiguities in favor of arbitration."); *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 752 (5th Cir. 1995); *Mar-Len of La., Inc. v., Parsons-Gilbane*, 773 F.2d 633, 635 & 636 (5th Cir. 1985) ("[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." "The weight of this presumption is 'heavy.'"). Consequently, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal*, 918 F.2d at 37)).

Here, the arbitration provision at issue is contained a "Consulting Agreement" between Bedrock PC 1099 LLC as the "Service Provider" and Sanchez as the "Consultant," which was signed on March 7, 2018. That Consulting Agreement provides in relevant part, as follows:

> 1. This is an agreement between Bedrock PC 1099 LLC "Service Provider" and the below named person "Consultant" for providing consulting services and personnel for wellsite operations and/or activities in the oil and gas industry with adequate resources, techniques and fully trained personnel under terms and conditions set out in a Master Services Agreement "MSA", Country Agreement or Work Order with an Operator (herein identified as

    "Company"). Consultant is not a third party beneficiary to the Company Agreements, but Company Agreements become part of this Agreement. In the event the MSA between Company and Service Provider varies from any section of this agreement, the MSA controls.

* * *

22.  This Agreement shall be governed by the laws of the State of Texas, unless otherwise stated in Company documents, excluding any choice of law rules which would refer the matter to the laws of another jurisdiction, and shall be performable in Harris County Texas. Each party hereto submits to the jurisdiction of the courts of the State of Texas in Harris County, Texas and the federal courts in and for the Southern District of Texas sitting in Houston, Texas in connection with any dispute arising under this agreement or any document or any instrument entered into in connection herewith. Any dispute that cannot be settled amicably shall be submitted to arbitration, the exclusive method of formal dispute resolution under the Texas General Arbitration Act. Further, if any provision of this Agreement is determined or declared by a court of competent jurisdiction to be invalid or otherwise unenforceable, all remaining provisions of the Agreement shall remain in force and effect.

(Document No. 25-2).

### III.  Discussion

  Bedrock maintains that arbitration is warranted based on the terms of the Consulting Agreement which was entered into by its agent, Bedrock PC 1099, LLC, and Sanchez. The Marathon Defendants maintain that arbitration is warranted for them, as well, based on the type of equitable estoppel articulated by the Fifth Circuit in *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (2000), as follows: "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

  Here, there is no dispute that the Consulting Agreement and the arbitration provision

contained therein are governed by Texas law. And, as has been made clear since the Fifth Circuit's decision in *Grigson*, it is state law that controls the determination of whether parties have agreed to arbitrate. *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261–62 (5th Cir. 2014) ("*Arthur Andersen* instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia,* equitable estoppel if the relevant state contract law so permits. Consequently, prior decisions allowing non-signatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson*, have been modified to conform with *Arthur Andersen*."). Under Texas law, where arbitration is sought by a non-signatory to an arbitration agreement, the key inquiry is whether the parties intended to encompass or include non-signatories. *Jody James Farms, JV v. The Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) ("Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms."). The Texas Supreme Court has so far recognized "six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." *Id.*

### A. Bedrock

Sanchez advances three arguments in response to Bedrock's Motion to Compel Arbitration. First, Sanchez argues that Bedrock cannot compel arbitration because Sanchez entered into the Consulting Agreement with Bedrock PC 1099 LLC – not the Bedrock Defendant herein. Second, Sanchez argues that the arbitration provision, particularly when considered in connection with language in the same paragraph about Texas law and the parties' submission to the jurisdiction of the state court in Harris County, and the federal court in the Southern District of Texas, does not

clearly and unambiguously provide for arbitration of his dispute(s). Third, Sanchez argues that Bedrock substantially availed itself of the judicial process prior to filing its Motion to Compel Arbitration and thereby waived its right to seek arbitration. Each argument fails.

As set forth in the Affidavit of Lowri Thomas, the Commercial and Legal Manager for NES Global Talent, which acquired Bedrock and is subsidiaries in October 2018, "Bedrock PC 1099, LLC is a Texas limited liability company with one managing member. Bedrock Petroleum Consultants, LLC is the sole managing member of Bedrock PC 1099 LLC and owns 100% of Bedrock PC 1099, LLC. Bedrock used the Bedrock PC 1099, LLC entity for all agreements with and payments to its contractors." (Document No. 28-1) at ¶ 4. Because the contents of Thomas' affidavit have not been controverted and because that affidavit evidence establishes that Bedrock PC 1099, LLC was acting as Bedrock's agent, it matters little that the Consulting Agreement was between Sanchez and Bedrock PC 1099, LLC. Agency principles, particularly in light of the uncontroverted evidence in the record, dictate that Bedrock be considered a party to the Consulting Agreement. *Jody James Farms*, 547 S.W.3d at 635 ("To establish an agency relationship, a non-signatory must show it was subject to the principal signatory's control and authorized to act as its agent."). In addition, despite the fact that ¶ 22 of the Consulting Agreement makes mention of Texas law and the state and federal courts, ¶ 22 provides, quite broadly, that "any" dispute that cannot be settled amicably, "shall" be submitted to arbitration under the TAA. Such broad language requiring arbitration is not ambiguous, nor is it inconsistent with ¶ 22's reference to either Texas law, or courts located in Texas. Under the TAA and the FAA, courts have a role in ordering parties to arbitration, and, in some instances, confirming arbitration decisions. Finally, Sanchez is wrong that

Bedrock substantially invoked the judicial process prior to filing its Motion to Compel Arbitration.[1] The record shows that this case was filed in March 2020. Other than filing a responsive Rule 12(b)(6) Motion to Dismiss and participating the filing of a Joint Discovery and Case Management Plan and a FED. R. CIV. P. 16 Scheduling Conference, Bedrock has done nothing to invoke the judicial process. Moreover, it was no more than six months between the date Bedrock first appeared in this case and Bedrock's Motion to Compel Arbitration. Nothing in the record supports the conclusion that Bedrock waived arbitration.

In all, Sanchez signed the Consulting Agreement, as did Bedrock through its agent, and Sanchez agreed to arbitrate "any dispute arising under [the Consulting Agreement] or any document or any instrument entered into in connection [therewith]. That agreement to arbitrate, as between Sanchez and Bedrock, is a valid agreement that covers the disputes at issue in this case. Bedrock's Motion to Compel Arbitration (Document No. 25) should therefore be granted.

**B.    Marathon**

Sanchez advances the same three arguments in response to Marathon's Motion to Compel Arbitration. The resolution of the second and third issues, as set forth above, applies equally to Marathon. As for Marathon's argument that intertwined claims estoppel requires the arbitration of Sanchez' claims against it as well, the Fifth Circuit's decision in *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611-613 (5th Cir. 2016), in which the Fifth Circuit made an *Erie* guess that intertwined

---

[1] "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull,* 258 S.W.3d 580, 589–90 (Tex. 2008); *see also Republic Ins. Co. v. Paico Receivables, LLC,* 383 F.3d 341, 344 (5th Cir. 2004) ("'Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'"). "[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999)

claims estoppel is and/or will be recognized by Texas law, fully supports Marathon's argument.

In *Grigson*, the Fifth Circuit, following a decision from the Eleventh Circuit in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), determined that non-signatories to an arbitration agreement could, under equitable estoppel principles, compel arbitration. From *Grigson*, two types of equitable estoppel have developed: one that is based on "concerted misconduct estoppel" and the other that is based on "intertwined claims estoppel." *See Hiser v. Nzone Guidance, LLC*, 799 F.App'x 247, 248 (5th Cir. 2020). The Texas Supreme Court has rejected, under Texas law, concerted misconduct estoppel, but has neither accepted nor rejected intertwined claims estoppel. *See Jody James Farms*, 547 S.W.3d at 639 ("In *In re Merrill Lynch Trust Co.*, we acknowledged the existence of this theory without deciding its validity in Texas. . . . We need not consider the viability of such a theory in this case. . ."). The Fifth Circuit, however, made an *Erie* guess in *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611-613 (5th Cir. 2016) that intertwined claims estoppel is a valid theory under Texas law for compelling arbitration by a non-signatory. That *Erie* guess in *Hays* is binding on this Court. *Moore v. Maverick Natural Resources, LLC*, Civil Action No. H-20-591, 2020 WL 6431905 *3 (S.D. Tex. Oct. 15, 2020) ("the Fifth Circuit's *Erie* guess in *Hays v. HCA Holdings, Inc.*, adopting the theory, is binding on this court"), *report and recommendation adopted*, No. CV H-20-591, 2020 WL 6392854 (S.D. Tex. Nov. 2, 2020) Consequently, the intertwined claims estoppel principle espoused by Marathon is a valid basis for compelling arbitration by a non-signatory.

As for whether intertwined claims estoppel is applicable in this case, the undersigned concludes that it is. According to Lowri Thomas, and not controverted by Sanchez, "Bedrock is a consulting company which provides personnel for wellsite operations and/or activities in the oil and

gas industry pursuant to Master Service Agreements with various operators including Marathon Oil Company." (Document No. 26-1 at ¶ 2). Bedrock entered into a Consulting Agreement with Sanchez on March 7, 2018. Sanchez thereafter worked for Marathon as a completions consultant in the Permian Basin, until October 2018. Sanchez alleges in his First Amended Complaint that he was employed by both Bedrock and Marathon, and also alleges that both are responsible for the overtime he claims he is due, as well as the discrimination he claims to have faced. Sanchez' overtime and discrimination claims against Bedrock and Marathon are, based on the provisions in the Consulting Agreement, the uncontested facts, and Sanchez' allegations, intertwined claims which give rise to intertwined claims estoppel.[2] Accordingly, Marathon's Motion to Compel Arbitration (Document No. 26) should also be granted.

## IV.  Conclusion and Recommendation

Based on the foregoing and the conclusion that arbitration should be compelled between all the parties to this case based on ¶ 22 of the aforementioned Consulting Agreement and the intertwined claims estoppel asserted by the Marathon Defendants, the Magistrate Judge

RECOMMENDS that Bedrock Petroleum Consultants LLC's Motion to Compel Arbitration (Document No. 25) and Marathon Oil Company and Marathon Oil Permian LLC's Motion to Compel Arbitration (Document No. 26) both be GRANTED. It is further

---

[2] This case is not like *Moore v. Maverick Natural Resources, LLC*, Civil Action No. H-20-591, 2020 WL 6431905 (S.D. Tex. Oct. 15, 2020), where the Court found that the FLSA claims were not intertwined with the agreement containing the arbitration clause. In *Moore*, the arbitration agreement was a separate document that did not contain any employment terms. Here, in contrast, the Consulting Agreement contained both the arbitration provision and generally set forth the terms of Sanchez' employment as a consultant, including, as is particularly relevant to Sanchez' FLSA claim(s), that he was to be considered a "self-employed, independent contractor" in connection with any worked performed for Bedrock or Marathon.

RECOMMEND that Bedrock Petroleum Consultants LLC's Amended Motion to Dismiss (Document No. 6) be DENIED as MOOT.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 21st day of January, 2021.

Frances H. Stacy
United States Magistrate Judge